UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LAWRENCE VIANI,<br><br>               Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE CO., A LINCOLN FNANCIAL GROUP COMPANY fka LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>               Defendant. | Case No.:  21-cv-00004-BEN (DEB)<br><br>**ORDER ON JOINT DISCOVERY MOTION**<br><br>**[DKT. NO. 23]** |

**I.     INTRODUCTION**

Before the Court is the parties' Joint Discovery Motion. Dkt. No. 23. Plaintiff Lawrence Viani ("Plaintiff") seeks discovery outside the administrative record, which Defendant The Lincoln National Life Insurance Company ("Defendant") opposes. *Id.*

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's request to compel responses to the discovery at issue.

///

///

///

## II. PROCEDURAL HISTORY

Plaintiff's Complaint alleges violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"). Dkt. No. 1. Plaintiff seeks benefits under a long-term disability ("LTD") policy issued by Defendant. *Id.* at 5, 7.

### a. Allegations in Plaintiff's Complaint

From July 2011 through December 15, 2017, Qualcomm employed Plaintiff as a Senior Staff Engineer. *Id.* at 2, 4. Plaintiff participated in Qualcomm's Welfare Benefit Plan (the "Plan"), which provided LTD benefits through Defendant. *Id.* at 2–3.

Plaintiff experienced Petit Mal seizures as a teenager. *Id.* at 4. In 2003, Plaintiff suffered a Grand Mal seizure and was prescribed Oxcarbazepine. *Id.* The medication diminished Plaintiff's seizure activity. *Id.* In September 2016, however, Plaintiff experienced two Grand Mal seizures while asleep and "experience[ed] an increase in seizure activity of approximately one per month in the late evening." *Id.* In January 2017, Plaintiff suffered a twenty-minute seizure and convulsed for three to five of those minutes. *Id.* Plaintiff was diagnosed with epilepsy and prescribed Vimpat. *Id.*

In March 2017, Plaintiff "experienced a seizure that lasted about two [] minutes" following a visit to urgent care earlier that day. *Id.* Beginning on April 21, 2017, "Plaintiff was unable to return to work" because his seizures had become increasingly intense, more frequent, and longer in duration. *Id.* On October 17, 2017, Plaintiff attempted to return to work, but the stress of the job "adversely affected his medical condition precluding Plaintiff from continuing his work after December 15, 2017." *Id.* Plaintiff alleges he "continues to be disabled to this date." *Id.*

In April 2017, Plaintiff applied for LTD benefits. Dkt. No. 23 at 10. Defendant "determined Plaintiff was entitled to LTD benefits under the Plan . . . ." and paid Plaintiff $8038.10 per month. Dkt. No. 1 at 4–5. On March 13, 2020, Defendant terminated Plaintiff's benefits, asserting "Plaintiff should be able to physically perform sedentary work." *Id.* at 5.

On July 22, 2020, Plaintiff administratively appealed Defendant's termination of benefits. *Id.* On September 16, 2020, Defendant "denied Plaintiff's administrative appeal stating that because Plaintiff's subjective complaints of cognitive limitations (fatigue, loss of concentration/memory) were not supported by appropriate testing to determine its validity it was not considered as a limitation in determining if Plaintiff was able to return to work as an engineer." *Id.* at 6.

On January 4, 2021, Plaintiff filed this case pursuant to 29 U.S.C. §1132(a)(1)(B). *Id.* at 2. Plaintiff alleges Defendant "ignored the opinions of Plaintiff's treating physicians, Plaintiff's vocational rehabilitation counselor, the cognitive testing (showing impaired scores on tests of language, diminished right-hand speed dexterity consistent with left frontal dysfunction and mildly impaired score on visual memory), and Plaintiff's own subjective complaints." *Id.* at 5–6. Plaintiff asserts "[t]his denial was wrongful and constitutes a breach of [Defendant's] obligations to provide benefits under the terms of the PLAN and a breach of the fiduciary duties to provide a full and fair review of the claim." *Id.* at 6.

### b. Plaintiff's Discovery Requests

Plaintiff requests the Court compel responses to Interrogatory Nos. 5, 6, 8, 9, and 11–18. Dkt. No. 23 at 22. These Interrogatories seek information regarding reviewing physicians Drs. Pearce (hired through Exam Coordinators Network) and Marehbian (hired through Network Medical Review) whom Defendant retained to review Plaintiff's medical records and opine on Plaintiff's alleged LTD. *See id.* at 12, 22–23. Specifically, Plaintiff's Interrogatories seek:

> 1) The number of claims [Defendant] referred to each for the years 2017 - 2020 and the monies paid to each on an annual basis[.] (Interrogatories 5, 6, 13, 14)
>
> 2) On an annual basis the number of reviews by each that resulted in a denial of benefits by [Defendant.] (Interrogatories 11, 12, 15, 17)

3) The number of reviews that resulted in a granting of benefits by [Defendant.] (Interrogatories 8, 9, 16, 18).

*Id.* at 22; *see also* Declaration of Barbara A. Casino, Dkt. No. 23-2 ("Casino Decl."), Ex. 3.

Plaintiff also requests the Court compel responses to Requests For Production ("RFP") 5, and 9–14, which seek:

**[RFP] NO. 5:** All claims' manuals, claims' handling manuals, procedure manuals, guides, appeals books, instructional and training documents available to **your** claims analysts during the pendency of Plaintiff's claim for disability benefits that discuss:

. . . .
c. evaluation and use of medical reviewers,
d. use of independent medical examiners,
g. evaluation of subjective complaints/symptoms,
h. evaluation of cognitive issues,
i. evaluation of medication side effects,
j. how to evaluate whether an occupation is gainful
k. questions to be presented to medical reviewers,
l. evaluation of seizure disorders/epilepsy,
m. evaluation of fatigue.[1]

**[RFP] NO. 9:** All **documents** relating to financial bonuses, incentives, stock options or any other type of compensation program (beyond regular salary or wages) in effect for any individuals handling, managing, overseeing or investigating **Plaintiff's claim** and appeal for long-term disability benefits, including for all persons identified in response to interrogatory No. 1.

**[RFP] NO. 10:** All **documents** that describe any relationship between **you** and Network Medical Review Co. (MNR) including, but not limited to, contracts, memoranda of understanding, service agreements, vendor agreements, policy letters and invoices in effect during 2019.

**[RFP] NO. 11:** All **documents** that describe any relationship between **you** and Genex Services LLC (Genex) and/or Exam Coordinators Network

---

[1] Because Plaintiff narrowed his request regarding RFP No. 5, the Court omits certain portions. Dkt. No. 23 at 27–28.

including, but not limited to, contracts, memoranda of understanding, service agreements, vendor agreements, policy letters and invoices in effect during 2019.

**[RFP] NO. 12:** All **documents** that constitute or describe policies and procedures for selecting **medical reviewers** for disability **claims** and/or appeals during 2019.

**[RFP] NO. 13:** All **documents** sent by MNR and received by **you** describing, evidencing, constituting, referring, or relating the business services that MNR would provide if engaged by **you**, including, but not limited to, any claims manuals, statements of MNR's mission, philosophy, descriptions of physician procedures, referral guidelines, general descriptions of disability evaluation procedures, descriptions of the independent medical evaluation services provided by MNR, descriptions of the independent medical evaluation services provided by MNR, descriptions of MNR's medical consultation fee schedules, and descriptions of MNR's guidelines for reviewing physicians, from 2017 to present.

**[RFP] NO. 14:** All **documents** sent by Genex and/or Exam Coordinators Network and received by **you** describing, evidencing, constituting, referring, or relating the business services that Genex and/or Exam Coordinators Network would provide if engaged by **you**, including, but not limited to, any claims manuals, statements of Genex and/or Exam Coordinators Network's mission, philosophy, descriptions of physician procedures, referral guidelines, general descriptions of disability evaluation procedures, descriptions of the independent medical evaluation services provided by Genex and/or Exam Coordinators Network, descriptions of the independent medical evaluation services provided by Genex and/or Exam Coordinators Network, descriptions of Genex and/or Exam Coordinators Network's medical consultation fee schedules, and descriptions of Genex and/or Exam Coordinators Network's guidelines for reviewing physicians, from 2017 to present.

Dkt. No. 23 at 27–28, 30–31, 33–34, 36; *see also* Casino Decl. at Ex. 4.

### III.     ANALYSIS

Plaintiff argues the requested discovery is relevant and appropriate because it bears on the credibility of Defendant's medical experts and whether Defendant conducted a full and fair review. *Id* at 6–14, 22–25, 27–29, 30–31, 33–35, 36. Defendant asserts the

discovery at issue was produced, does not exist, or is improper because the Court's de novo review of this ERISA case is limited to the administrative record. Dkt. No. 23 at 14–21.

### a. Legal Standards

"When a plan does not confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits *de novo* . . . 'regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest.'" *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).[2]

A de novo review of an ERISA case is generally limited to the administrative record. *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). Evidence beyond the administrative record is considered only in exceptional circumstances. *Id.* ("Agreeing with the Third, Fourth, Seventh, Eighth, and Eleventh Circuits, we held that [during de novo review] extrinsic evidence could be considered only under certain limited circumstances" and adopting the Fourth Circuit's rule that only exceptional circumstances warrant discovery outside the administrative record.) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943–44 (9th Cir. 1995)); *see also Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609, 613 (N.D. Cal. 2014) ("In an attempt to further ERISA's policy of keeping proceedings inexpensive and expeditious, the Ninth Circuit has placed significant restrictions on district courts' ability to consider evidence outside the administrative record."); *Mongeluzo*, 46 F.3d 938, 943–44 (9th Cir. 1995) (Evidence outside the administrative record, therefore, is permissible "only when circumstances clearly establish that additional evidence is

---

[2] If a plan does confer discretion to the administrator, the standard of review shifts to abuse of discretion and conflict of interest evidence becomes a factor for consideration. *Abatie*, 458 F.3d at 965–66.

necessary to conduct an adequate *de novo* review of the benefit decision.") (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)).

The Ninth Circuit has adopted the standards articulated by the Fourth Circuit in evaluating whether exceptional circumstances exist:

> [C]laims that require consideration of complex medical questions or issues regarding the credibility or medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Opeta*, 484 F.3d at 1217 (quoting *Quesinberry*, 987 F.2d at 1027). "[T]he introduction of new evidence is [not] required in such cases," however, and "[a] district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense." *Quesinberry*, 987 F.2d at 1027; *see also Nguyen v. Sun Life Assurance Co. of Canada*, No. 14-cv-05295-JST-LB, 2015 WL 6459689, at *2 (N.D. Cal. Oct. 27, 2015) ("Even where such circumstances exist, however, new evidence is not 'required.'") (citing *Quesinberry*, 987 F.2d at 1027).

These restrictions apply to discovery. *See, e.g.*, *Nguyen*, 2015 WL 6459689, at *2 (The limits in *Opeta* "also constrain discovery."); *Polnicky v. Liberty Life Assurance Co. of Bos.*, No. 13-cv-1478-SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 5, 2014) (Although *Opeta* limits admissibility, "courts in this district have held that 'in light of *Opeta*'s limits on admissibility of evidence in *de novo* cases and the ERISA's policy of keeping proceedings inexpensive and expeditious, it is appropriate to place similar limits on discovery.'") (quoting *Rowell v. Aviza Tech. Health & Welfare Plan*, No. 10-cv-5656-PSG,

2012 WL 440742, at *3 n.26 (N.D. Cal. Feb. 10, 2012)).[3]

### b. Discussion

The parties agree a de novo standard of review applies to this case. Dkt. No. 23 at 8, 14–17; *see also* Dkt. No. 12 at 3. The Court, therefore, examines whether "exceptional circumstances" warrant discovery. *Polnicky*, 2014 WL 969973, at *3 (applying *Quesinberry* and *Opeta*'s exceptional circumstances test and declining to allow discovery after the moving party "failed to clearly establish that this additional discovery is necessary for the Court to conduct an adequate *de novo* review.").

### 1. Conflict of Interest Discovery

Plaintiff's Interrogatory Nos. 5, 6, 8, 9, and 11 through 18 seek the number of claims referred by Defendant to Drs. Pearce and Merehbian, including the number of reviews resulting in a denial of benefits, the number of reviews resulting in a grant of benefits, and the amount of annual money paid to each physician. Dkt. No. 23 at 22; *see also* Casino Decl., Ex. 3. Similarly, Plaintiff's RFP Nos. 9 through 14 seek contracts, financial incentives, and policies and procedures governing individuals who handled, investigated, or oversaw Plaintiff's claim. Dkt. No. 23 at 30–31. Plaintiff argues this discovery is relevant to determine "whether there is a bias or conflict of interest that would affect the credibility of" Drs. Pearce and Marehbian. *Id.* at 22.

The Court declines to allow this conflict of interest discovery. Plaintiff's discovery requests are not narrowly tailored and focused. Instead, they are broad and potentially unlimited in scope, spanning, in the first instance, 12 Interrogatories and 6 RFPs. Plaintiff further represents he may propound follow-up discovery upon completion of this round of

---

[3] *See also Blaj v. Unum Life Ins. Co. of Am.*, Case No. 13-cv-04075-MMC-KAW, 2014 WL 2735182, at *2 (N.D. Cal. June 16, 2014) (applying *Opeta* to discovery); *Laird v. United of Omaha Life Ins. Co.*, Case No. 15-cv-2205-LAB-JMA (S.D. Cal. July 1, 2016) (attached at Dkt. No. 24 at 6) (applying *Opeta*'s limits on admissibility to the parties' discovery dispute); *John Fritch v. United of Omaha Life Ins. Co.*, Case No. 16-cv-2448-JAH-BGS (S.D. Cal. Mar. 23, 2017) (attached at Dkt. No. 18) (same).

discovery. *Id.* at 24. This wholesale discovery practice is contrary to and undermines ERISA's "policy of keeping proceedings inexpensive and expeditious . . . ." *Gonda*, 300 F.R.D. at 613.

 Even if Plaintiff's discovery were focused and limited, the Court would still find it unnecessary. Although certain *Quesinberry* factors could apply here—Plaintiff argues a complex medical condition, Defendant serves as both the administrator and the payor, and Plaintiff disputes the credibility of Defendant's medical experts—Plaintiff has not adequately established that this discovery is necessary for the Court's de novo review. Plaintiff's discovery does not seek to shed light on Plaintiff's alleged disability. Instead, the discovery is focused on illuminating potential conflicts of interest.

 The Court agrees with the decisions rejecting conflict of interest discovery in de novo ERISA cases, where the Court affords no deference to the plan administrator's denial of benefits. Instead, under a de novo standard of review, the Court's task is to determine "whether the plan administrator correctly or incorrectly denied benefits," regardless of any conflict. *Abatie*, 458 F.3d at 962–63; *see also Laird*, Case No. 15-cv-2205-LAB-JMA (attached at Dkt. No. 24 at 6) ("The *de novo* standard allows the Court to account for the fact that Defendant's paid consultants reached decisions that were contrary to those of Plaintiff's treating doctors, and that Defendant's consultants apparently reached those decisions without examining Plaintiff."); *Blaj*, 2014 WL 2735182, at *8 (denying conflict of interest discovery because "the district court does not require any information regarding performance evaluations, service contracts, or compensation for [] [insurer] employees, because the opinions of those individuals are not afforded any deference in this action.").[4]

---

[4] *See also Polnicky*, 2014 WL 969973, at *2 ("[S]everal district courts in this circuit have held that the mere fact a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias."); *Dilley v. Metro. Life Ins. Co.*, 256 F.R.D. 643, 645 (N.D. Cal. 2009) ("Details of the number of claims denied based on a medical records review by [MNR] would be meaningless unless a finding could be made that MetLife had wrongly denied those claims. Because none of

Although the Court recognizes that some district courts have allowed conflict of interest discovery,[5] the Court agrees with the rationale articulated in *Nguyen* that, if discovery were allowed to explore "the existence of a structural conflict of interest, or to observe that consultants were paid, then the situations in which *Opeta* authorizes such discovery would be routine rather than 'exceptional[]' [and] *Opeta* would erase its own rule." 2015 WL 6459689, at *10.

In sum, the extensive discovery Plaintiff seeks, with the promise of potentially more to come, would frustrate ERISA's policy facilitating inexpensive and expeditious judicial review and is unnecessary for the Court to perform a de novo review. The Court, therefore, denies Plaintiff's request to compel responses to its conflict of interest discovery.

## 2.     Full and Fair Review Discovery

Plaintiff's RFP No. 5 seeks, among other things, discovery of Defendant's policies and procedures that discuss "evaluation and use of medical reviewers," "evaluation of subjective complaints/symptoms," and "how to evaluate whether occupation is gainful." Dkt. No. 23 at 27–28. Plaintiff argues RFP No. 5 is relevant, even to a de novo review, because any failure by Defendant to follow its own procedures would inform whether it conducted a full and fair review. *Id.* at 28.

Plaintiff further contends "[t]hese documents are considered 'relevant' and must be produced by the Administrator regardless of whether they were relied upon in making the

---

those cases are before the court, the court is not in a position to make such a finding."); *Roberts v. Prudential Ins. Co. of Am.*, No. 12-cv-1085-L-DHB, 2013 WL 1431725, at *6 (S.D. Cal. Apr. 9, 2013) (finding the number of claims denied by the reviewing physician meaningless without knowing whether those claims had been wrongfully denied); *Nguyen*, 2015 WL 6459689, at *6 (excluding discovery and holding in part "[t]he plaintiff has not 'clearly established' that, because of 'complex medical questions,' evidence beyond the administrative record is 'necessary' for an adequate *de novo* review of his claim.").

[5] *See, e.g.*, *Knopp v. Life Ins. Co. of N. Am.*, No. 09-cv-0452-CRB-EMC, 2009 WL 5215395, at *3 (N.D. Cal. Dec. 28, 2009).

claim decision." *Id.* at 28–29. In support of this argument, Plaintiff cites 29 C.F.R. § 2560.503-1(m)(8), which states:

> A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information[:]
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination;[6] or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

---

[6] Pursuant to 29 C.F.R. § 2560.503-1(b)(5), Defendant is:

> (b) Obligat[ed] to establish and maintain reasonable claims procedures. Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan will be deemed to be reasonable only if—
> . . . .
> (5) The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

*Id.*

Defendant argues the regulation does not require production of the described documents but only defines them as "relevant." Defendant also argues it has already produced the documents described in § 2560.503-1(m)(8)(i) and (ii) (i.e. documents "relied upon in making a benefit determination" and documents "submitted, considered, or generated in the course of making the . . . determination"), and it did not create the documents described in § 2560.503-1(m)(8)(iii) (i.e., documents demonstrating "compliance with the [required] administrative processes and safeguards") because the Department of Labor regulations do not require creation of new documents. Dkt. No. 23 at 29. Regarding 29 C.F.R. § 2560.503-1(m)(8)(iv), Defendant claims "there was no 'denied treatment option' and . . . that it does not have any 'statement of policy or guidance with respect to the plan, concerning the . . . benefit for the claimant's diagnosis.'" Dkt. No. 23 at 30.

Although Defendant is correct that the cited regulation does not expressly require production of the documents, production is implied. *See Nguyen*, 2015 WL 6459689, at *4 (29 C.F.R. § 2560.503-1(m)(8)(iii) "makes 'relevant' (and so mandates the production of) 'information' that '[d]emonstrates compliance with the administrative processes and safeguards required . . . .'").

Based on Defendant's representations, the documents falling within § 2560.503-1(m)(8) (i), (ii), and (iv) do not exist or are already in the administrative record. "[A]bsent contrary evidence, 'the Court presumes the truthfulness of representations made to the Court by attorneys.'" *Munoz v. InGenesis STGi Partners*, LLC, No. 14-cv-1547-MMA-BLM, 2015 WL 13559890, at *3 (S.D. Cal. 2015) (quoting *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 137 (E.D. Mich. 2009)). Plaintiff's motion to compel these documents, therefore, is DENIED as moot.

Defendant's representations regarding the documents falling within § 2560.503-1(m)(8)(iii) (i.e., that Defendant "evaluated Plaintiff's claim on its individual merits based on the facts and circumstances of the claim and terms of the Group Policy at issue," and

that Defendant "did not create any new documents to comply with the cited regulatory requirement," however, are unclear. Dkt. No. 23 at 29–30. Defendant's response leaves open the possibility that it has pre-existing documents responsive to this regulation and Plaintiff's RFP No. 5. If any such documents exist (regardless of when and why they were created or whether they were specifically relied upon), Defendant must produce them. Accordingly, the Court GRANTS Plaintiff's request to compel production of the documents described in § 2560.503-1(m)(8)(iii).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's requests to propound additional discovery outside the administrative record. If any documents pertaining to 29 C.F.R. § 2560.503-1(m)(8)(iii) exist, Defendant must produce them by **October 7, 2021**. Alternatively, if there are no documents pertaining to 29 C.F.R. § 2560.503-1(m)(8)(iii), by **October 7, 2021**, Defendant must serve Plaintiff with a declaration clearly stating that no such documents exist.

**IT IS SO ORDERED.**

Dated: September 23, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge